**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FASTWARE, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>GOLD TYPE BUSINESS MACHINES,<br>INC. and RICHARD PICOLLI,<br><br>                Defendants. | Civil Action No.: 09-1530 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court on the motion for clarification and/or reconsideration of portions of this Court's May 15, 2009 Opinion filed by Plaintiff Fastware, LLC ("Fastware") and a letter request by Fastware seeking guidance on how to enforce this Court's corresponding May 15, 2009 Order filed on June 29, 2009. This Court has considered the submissions in support of and in opposition to the motion and letter request and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.

On April 2, 2009 Fastware filed the Complaint in this matter along with an Order to Show Cause seeking temporary restraints against Defendants, alleging copyright infringement by Defendants with respect to InfoCop by Fastware software. This Court granted the temporary restraints. On May 1, 2009 this Court held a hearing on Fastware's application for a preliminary injunction. After consideration of the submissions of the parties and the parties' arguments at the May 1 hearing, this Court issued an Opinion and an Order on May 15, 2009 dissolving the

temporary restraints and denying Fastware's request for a preliminary injunction.  Additionally,

in response to concessions made by Defendants' counsel at the May 1 hearing removing one

legal issue from dispute, payment of license as opposed to support fees, this Court ordered the

following:

> **ORDERED** that within fourteen (14) days of this Order Defendants shall in accordance with their stipulation and representations to this Court provide an Accounting to Plaintiff of all InfoCop licenses sold by Defendants on or after October 31, 2008 to the present; and it is further
> **ORDERED** that within thirty (30) days of the date of this Order Defendants shall pay to Plaintiff any outstanding license fees using the historical license rate discussed in this Court's Opinion and shall pay future license fees to Plaintiff in accordance with Defendants representations to this Court . . .

(May 15, 2009 Order, CM/ECF No. 46, at 1.)   Fastware now seeks clarification and/or

reconsideration of two specific statements in this Court's May 15 Opinion denying the

preliminary injunction and guidance regarding enforcement of the above orders regarding the

accounting and payment of license fees, which it asserts are not being complied with by

Defendants.

# I.      MOTION FOR CLARIFICATION AND/OR RECONSIDERATION

"Reconsideration is an extraordinary remedy" and should be "granted 'very sparingly.'"

See L.Civ.R. 7.1(i) cmt.6(d); see also Fellenz v. Lombard Investment Corp., Nos. 04-3993, 04-

5768, 04-3992, 04-6105, 2005 WL 3104145, at *1 (D.N.J. Oct. 18, 2005).  A motion for

reconsideration must "set[] forth concisely the matter or controlling decisions which the party

believes the Judge or Magistrate Judge has overlooked."  L.Civ.R. 7.1(i).  When the assertion is

that the Court overlooked something, the Court must have overlooked "some dispositive factual

or legal matter that was presented to it."  McGovern v. City of Jersey, No. 98-5186, 2008 WL

58820, at *2 (D.N.J. Jan. 2, 2008).

Fastware's motion seeks two things: (1) "that the Court clarify a sentence in its Opinion to make clear that the Defendants cannot claim or attempt to prove that they have an exclusive license under the copyrights in the InfoCop by Fastware software," and (2) that "the Court . . . reconsider and clarify a sentence in the Opinion that suggests that Fastware lacks the right to enforce the termination provision of the . . . End User License Agreements ("EULAs") signed by many end users of the software, and the resulting implication that the expiration date system in the software is somehow improper."  (Fastware's Mem. of Law in Supp. of Its Mot. for Clarification and/or Reconsideration of Portions of the Court's May 15, 2009 Opinion, at 1-2 [hereinafter "Pl.'s Mem."].)  Notably, Fastware does not challenge the Court's holding denying the preliminary injunction or argue that clarification of either sentence will change the outcome. It will not.  Rather, under the guise of a motion for clarification and/or reconsideration, Fastware seeks rulings from this Court going to the merits of the underlying causes of action, issues not before the Court or decided by the Court on the application for a preliminary injunction. Therefore, the Court finds that Fastware has not met its burden for reconsideration.

However, for clarification, this Court will address a few of Fastware's arguments. With regard to the Court's sentence noting that there is evidence in the record that *may* support an exclusive license argument by Defendants, Fastware states that the "unfortunate injection of this issue into the case has placed Fastware in the position where it will be at legal risk if it now decides to pursue sales through other resellers . . . ."  (Id. at 2.)  First, the Court did not "inject" this issue into the case.  In Defendants' opposition brief to Fastware's application for a preliminary injunction, they stated: "Mr. Hopwood admitted to Mr. Picolli that Fastware had

granted GTBM an exclusive license to distribute the product," referring to an email referred to in this Court's May 15 Opinion.  (Defs.' Mem. of Law in Opp'n to Plf.'s Mot. for Prelim. Inj., at 14 [hereinafter "Opp'n Mem."].)  Defendants further stated that "[w]hether Mr. Hopwood's use of the word 'exclusive' in this email satisfies the writing requirement for an exclusive license need not be decided for purposes of this motion" (Id., at 14 n.7.), arguing that at a minimum some type of license existed that was irrevocable at will.  Defendants argued that they are joint authors of the software, that they are partnership owners of the software, or that they have an irrevocable license to the software, exclusive or implied.  This Court recognizes that Defendants made statements at the May 1 hearing that are inconsistent with an assertion of an exclusive license; they have alternative arguments that are inconsistent with each other on certain points.  However, inconsistency does not mean that evidence does not exist which *may* support various arguments. All this Court held in its May 15 Opinion was that Fastware had not met *its* burden for a preliminary injunction because the evidence presented demonstrated that it was likely that a factfinder would find, at a minimum, that Defendants had "some license" that "was irrevocable at the unilateral will of Fastware"–a possible defense to a copyright claim depending on the scope of the license.  Presumably once the parties begin addressing the merits of the causes of action, Fastware will use any inconsistencies in Defendants' statements in support of its positions, but such inconsistencies with respect to particular arguments at the injunction stage do not change this Court's ruling given the evidence presented.

With respect to the EULAs, the Court did not *hold* that Fastware had no rights under the EULA.  On the contrary, it acknowledged Fastware's express third party beneficiary rights to enforce "its *intellectual property rights*."  Defendants had argued that to the extent that they

manipulated the software to keep it running such manipulation was within its rights with respect to Fastware and required by its obligations to its customers.  There has been no allegation that an end user subject to the EULA was interfering with Fastware's intellectual property rights. Therefore, the Court did not address any rights that Fastware may have in that situation.  The Court merely stated that "[t]here is nothing in the agreements or prior course of conduct that would indicate that Fastware had a right to interfere with the functioning of the software for end users because of a dispute *between GTBM and Fastware* over remittances of fees *from GTBM [to Fastware]*."  As with the license issue, the Court was merely evaluating the evidence to determine the likelihood of Fastware's ultimate success on the merits of its various claims; the Court did not make any holding with respect to the merits of the underlying causes of action.  In fact, the crux of the Court's holding was that the parties' rights are unclear, and that "[u]ntil those rights are determined, what [action] was authorized cannot be determined."

Finally, to the extent that Fastware argues that it faces greater risks now because of this Court's Opinion, the Court finds that argument without any merit.  The reality is that both parties began a business relationship without clear contours of the rights and responsibilities of each party.  Each chose to continue this relationship for over seven years even though significant revenues were being generated and each was asserting conflicting rights.  The parties were always at risk in the event of disagreement.  As this Court noted in its Opinion, until the parties' rights are finally determined either by settlement or final adjudication, the risk will remain.

## II.    <u>REQUEST FOR GUIDANCE ON ENFORCING THIS COURT'S ORDER</u>

Fastware asserts in its reply letter dated July 9, 2009, that the Orders regarding an accounting and payment of license fees was "a condition to the denial [of the preliminary

injunction request.]" (Fastware's Ltr. Reply, at 2.)  This statement is not accurate; these Orders

merely reflected Defendants' concession that one legal issue, license fees, was not in dispute.  At

the May 1 hearing, Defendants' counsel represented to the Court that all license fees had been

paid and would be paid in the future, and they consented to an accounting to support their

representation.  Based on these statements this Court ordered the accounting and ordered that any

outstanding license fees, if any based on the accounting, be paid and that license fees be paid on

any new licenses going forward.  To be clear, this Court's Order was that any and all *license* fees

be paid according to the historical rate agreed by the parties, $500.  Saying that, something does

not become a license fee merely because it appears on an invoice.  A number of licenses have

been sold to date.  This Court expects that Defendants, per their stipulations to this Court, have

paid Fastware an amount equal to $500 times the amount of licenses sold and will pay $500 for

each new license sold.  The Court will not get involved at this stage of the litigation in how

Fastware has applied various payments from Defendants; such involvement necessarily would

involve the disputed support fees, which will be resolved through this litigation.  If, after the

accounting, Fastware can demonstrate that Defendants have not paid this amount, then it may file

an appropriate motion.  Finally, this Court agrees with Defendants that it did not order a certified

accounting.  Nevertheless, Defendants' state that they "do not oppose Fastware's sending an

independent auditor (at Fastware's sole expense) to GTBM to review GTBM's records of new

licenses sold and invoiced since November 1, 2008, subject to a protective order precluding such

independent auditor from disclosing or otherwise using the information reviewed for any purpose

other than to confirm the number of licenses sold and invoiced by GTBM since November 1,

2008." (Defs.' Opp'n Ltr., July 6, 2009, at 5.)  This Court agrees that, if Fastware chooses to

independently verify Defendants' accounting, a protective order is appropriate.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, this Court denies Fastware's motion for clarification and/or

reconsideration.  An appropriate Order accompanies this Opinion.


DATED: July 13, 2009                      /s/ Jose L. Linares_____
                                          JOSE L. LINARES
                                          UNITED STATES DISTRICT JUDGE